GREAT NORTHERN INSURANCE
COMPANY a/s/o HARLAN KENT and
PATRICIA KENT,

       Plaintiff,

       v.

BMW OF NORTH AMERICA, LLC,           No. 15-cv-00416 (VAB)

       Defendant/Third-Party Plaintiff,

       v.

PIERBURG GMBH and
PIERBURG PUMP TECHNOLOGY GMBH,

       Third-Party Defendants.

## RULING AND ORDER ON MOTION TO DISMISS

Great Northern Insurance Company ("Plaintiff" or "Great Northern"), the insurer of real

or personal property owned by the insureds, Harlan Kent and Patricia Kent ("the Kents"), has

sued BMW of North America, LLC ("Defendant," "Third-Party Plaintiff," or "BMW LLC") and

BMW LLC's suppliers of auxiliary coolant pumps, Pierburg GMBH and Pierburg Pump

Technology GMBH ("Third-Party Defendants" or "Pierburg Entities"). Great Northern's

Amended Complaint alleges negligence, strict liability, and breach of warranty.

The Pierburg Entities now move to dismiss Great Northern's Amended Complaint, as

well as BMW LLC's Cross-Claim and Third-Party Complaint against the Pierburg Entities,

arguing that this Court lacks personal jurisdiction over them.

 For the reasons that follow, the motions are **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  FACTUAL ALLEGATIONS

The Kents own a 2012 BMW 750i ("BMW"), a house, and other real and personal property. Pl.'s Am. Compl. ¶¶ 9–10. Great Northern maintains that the Kent's BMW model was the subject of a product recall related to an increased risk of fire because of a defective auxiliary coolant pump. *Id.* ¶ 11.

On February 5, 2014, the Kents allegedly returned home in their BMW from a trip to Massachusetts, and parked their car in their garage. *Id.* ¶ 12. Sometime later, the car allegedly caught fire, and eventually the entire BMW became engulfed in flames. *Id.* ¶ 14. The fire and resulting smoke allegedly spread throughout the garage, to an Audi A6 car also parked there as well as to a snow blower also in the garage. *Id.* ¶¶ 14, 16–18. The smoke from the burning vehicles also affected the rest of the house. *Id.* ¶ 19.

Expert investigator(s) allegedly concluded that the fire was consistent with similar fires involving defective auxiliary pumps. *Id.* ¶ 24. Great Northern alleges that the Kents and any prior users of the BMW used the car for reasonable, foreseeable, and intended purposes, and their acts or omissions were neither the proximate, direct, nor contributory causes of the fire. *Id.* ¶ 25.

Under the terms of the insurance agreement with the Kents, Great Northern made payments in the amount of $339,428.21, as compensation for the damages to the house, garage, and personal property, and in the amount of $108,363.30 as compensation for the damage to the cars, for a total of $447,791.52, allegedly the full amount to which Great Northern is subrogated at law and entitled to recover. *Id.* ¶¶ 9, 26. The Kents also allegedly suffered a loss of $1,000.00 due to the policy deductible. *Id.* ¶ 27.

BMW LLC maintains that the Pierburg Entities are the upstream supplier of the car's allegedly defective auxiliary coolant pump and that the Pierburg Entities are parties to a supplier contract with Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), the parent company of BMW LLC ("Supplier Contract"). Def.'s Cross-cl. ¶¶ 5–6; *see also* Def.'s Third-Party Compl. ¶ 14.

The Supplier Contract includes a November 21, 1995, Warranty Agreement between BMW AG, its associated companies, and Kolbenschmidt AG[1] and BMW AG. BMW's Opp'n Br. at 4. The Warranty Agreement states:

> In amending Section 14.3 of the BMW Purchasing Conditions, the Parties agree to the following:
>
> If one of the Contractual Partners or an indemnifiable member of its distribution network abroad is alleged to be liable for personal injury and/or property damage due to a production defect (product-liability claim), then this Contractual Partner may, at its own discretion, also assert claims for indemnity and full or partial recourse against the other Contractual Partner at the court of jurisdiction of the main claim. This right also applies to the substantive law of the respective court of jurisdiction.

*Id.* (quoting 1995 Warranty Agreement § 7, BMW's Opp'n Br., Ex. A, ECF No. 68-2).

The July 15, 1996, Warranty Agreement between BMW AG and Pierburg AG similarly states:

> In amending Section 14.3 of the BMW Purchasing Conditions, the parties agree to the following:
>
> If a contractual partner or an indemnifiable member of its distribution network abroad is alleged to be liable for personal injury and/or property damage due to a production defect (product-liability claim), this contractual partner may, at his own discretion, assert claims against the other contractual partner for indemnity and full or partial recourse also at the jurisdiction of the main claim. This right also applies to the substantive law of the respective court of jurisdiction.

---

[1] In 1997, a subsidiary of Kolbenschmidt AG, KS Kolbenschmidt GMBH, allegedly merged with Pierburg GMBH. BMW's Opp'n Br. at 4 n.2.

*Id.* (quoting 1996 Warranty Agreement § 7, BMW Opp'n Br., Ex. B, ECF No. 68-2).

The July 1, 2012, Warranty Agreement—the most current warranty agreement among BMW AG, the Pierburg Entities, and others[2]—contains a forum-selection clause that states:

> Claims in connection with product liability, irrespective of their legal basis, remain unaffected by this agreement.
>
> Should a third party make a legal claim on BMW or a company affiliated with BMW (§ 15 AktG, German Stock Companies Act) for compensation for personal and/or material damage, BMW may also take the necessary procedural steps at the relevant place of jurisdiction in order to enforce its claims against the Contractor. In such a case, the law applicable to the place of jurisdiction shall exclusively apply with regard to the parties' rights and obligations.

*Id.* at 5 (quoting 2012 Warranty Agreement § 7, BMW Opp'n Br., Ex. C, ECF No. 68-2) (collectively "the Warranty Agreements").

Furthermore, the Preamble of the July 1, 2012 Warranty Agreement states that it supersedes and replaces all prior agreements. *Id.* at 6 (citing 2012 Warranty Agreement § 7).

## B.    PROCEDURAL BACKGROUND

On March 22, 2015, Great Northern filed a Complaint against BMW LLC. ECF No. 1. BMW LLC answered on April 14, 2015. ECF No. 9.

On January 27, 2017, Great Northern filed an Amended Complaint against BMW LLC and joined the Pierburg Entities. ECF No. 34.

BMW LLC then filed a Third-Party Complaint against the Pierburg Entities. ECF No. 35. The Third-Party Complaint alleges four counts against the Pierburg Entities as the alleged upstream supplier of the defective auxiliary coolant pump contained within the subject vehicle.

---

[2] KS Kolbenschmidt GMBH, KS Gleitlager GMBH, KS Aluminum Technologie GMBH, and MS Motor Service International GMBH were also parties to the July 1, 2012, Warranty Agreement. BMW Opp'n Br. at 5. Furthermore, KS Kolbenschmidt GMBH and KS Gleitlager GMBH are allegedly part of Rheinmetall Automative. *Id.* Moreover, MS Motorservice International GMBH is allegedly the sales organization for the worldwide aftermarket activities of Rheinmetall Automotive. *Id.*

Third-Party Compl. ¶¶ 11–12. The Third-Party Complaint alleges contract and common-law indemnity claims. *Id.* ¶¶ 13–16, 17–20.

BMW LLC also answered Great Northern's Amended Complaint asserting cross-claims against the Pierburg Entities. ECF No. 36. The cross-claim against the Pierburg Entities alleges four counts of common-law and contractual indemnity. *See generally* Def.'s Cross-cl. ¶¶ 9–14.

## II.    STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, a "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Radwan v. Univ. of Connecticut Bd. of Trustees*, No. 3:16-cv-2091 (VAB), 2017 WL 6459799, at *3 (D. Conn. Dec. 14, 2017) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003)). Prior to discovery, a plaintiff challenged by a jurisdiction-testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction. *Id.*

"At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Id.* (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Such allegations must be made through the plaintiff's "own affidavits and supporting materials." *Id.* (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). In deciding a 12(b)(2) motion to dismiss, a court must construe the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor. *Id.* (citing *See A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993)).

In a diversity action, the amenability of a foreign corporation to suit in federal court is determined in accordance with the law of the state where the court sits; Connecticut law therefore is applies to this case. *See Moreno v. Aerostar Airport Holdings, LLC*, No. 3:15-cv-

1194 (VAB), 2016 WL 5844464, at *2 (D. Conn. Sept. 30, 2016) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963)). In Connecticut, "a trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the state's long-arm] statute and of the due process clause of the federal constitution." *Id.* (citing *Thomason v. Chem. Bank*, 661 A.2d 595, 598 (Conn. 1995)). The court will address the question of whether it would offend due process to assert jurisdiction only after determining that jurisdiction is statutorily permissible. *Id.* (citing *Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.*, 460 A.2d 481, 484 (Conn. 1983)).

The trial court must accept all undisputed factual allegations for the purpose of determining personal jurisdiction. *Id.* (citing *Pitruzello v. Muro*, 798 A.2d 469, 473 (Conn. App. Ct. 2002)). If a plaintiff's factual allegations are disputed, however, the Court cannot "avoid scrutiny of the plaintiff's affidavit to determine whether it [can] provide a sufficient basis for the court to assume . . . jurisdiction." *See id.* (quoting *Pitruzello*, 798 A.2d 469, 473 (Conn. App. Ct. 2002)) (approving of a trial court's decision not to exercise jurisdiction over a defendant because even though plaintiff's allegations, "standing alone, might have provided a basis for assuming personal jurisdiction," they "were not supported by [the plaintiff's] affidavit and [had] been contradicted by [the defendant's] affidavit"); *see also Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed. App'x 16, 19 (2d Cir. 2015) ("A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place."); *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 757 (S.D.N.Y. 2004) ("The court accepts plaintiffs' allegations of jurisdictional facts and will construe all factual inferences in their favor. It need not, however, accept a legally conclusory assertion." (internal citations omitted)).

## III. DISCUSSION

The threshold question is whether the Pierburg Entities have consented to personal jurisdiction in Connecticut. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.") (citation and internal quotation marks omitted). The answer is yes.

### A. ENFORCEABILITY OF THE FORUM-SELECTION CLAUSE

BMW LLC argues that the Pierburg Entities consented to personal jurisdiction in three separate Warranty Agreements. BMW's Opp'n Br. at 4–6; Def.'s Ex. A at 4–5; Def.'s Ex. B at 8; Def.'s Ex. C at 9–10. The Pierburg Entities argue that consent to personal jurisdiction must be indicated in specific language, and that the Warranty Agreements are unenforceable because they are overly broad and vague. Pierburg Reply Br. at 2–4.[3] The Court disagrees.

"Unlike subject matter jurisdiction, 'the requirement of personal jurisdiction represents first of all an individual right, [and therefore] it can, like other such rights, be waived.'" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). "Also, unlike subject matter jurisdiction, a party may simply consent to a court's exercise of personal jurisdiction: for

---

[3] Although the Pierburg Entities address the issue of consent in their reply brief, the argument is waived because the Pierburg Entities failed to make the argument in its brief in support of its motions to dismiss. *Cf. Poriss v. Gene Langan Volkswagen of Connecticut, Inc.*, No. 3:15-cv-01837 (JAM), 2016 WL 1271460, at *4 (D. Conn. Mar. 31, 2016) ("Because this argument was raised for the first time in defendants' sur-reply brief, I deem it to be waived."); *Ferrante v. Capitol Reg'l Educ. Council*, No. 3:14-cv-00392 (VLB), 2015 WL 1445206, at *6 (D. Conn. Mar. 30, 2015) ("The court does not consider this argument, as it is impermissibly raised for the first time in defendant's reply brief, and there is no reason why it could not have been raised in the initial motion to dismiss."). Because the Pierburg Entities' waiver does not change the outcome, the Court will continue in its analysis.

example, an entity may contract or stipulate with another to permit proceedings in a state's courts, notwithstanding the remoteness from the state of its operations and organization." *Id.* (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ."); *Petrowski v. Hawkeye–Sec. Ins. Co.*, 350 U.S. 495, 495–96 (1956) (*per curiam*) (relying on parties' stipulation to sustain exercise of personal jurisdiction).

Moreover, "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (citing *Szukhent*, 375 U.S. at 315–16 ("And it is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . .") (citation omitted); 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1064 (4th ed. 2017).

"The Supreme Court certainly has indicated that forum selection . . . clauses are presumptively valid where the underlying transaction is fundamentally international in character." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir. 1993). As the Second Circuit noted in *Roby*, "[f]orum selection . . . clauses eliminate uncertainty in international commerce and insure that the parties are not unexpectedly subjected to hostile forums and laws." *Id.* at 1363; *see id.* ("In addition to these rationales for the presumptive validity of forum selection . . . clauses, the Court has noted that contracts entered into freely generally should be enforced because the financial effect of forum selection . . . clauses likely will be reflected in the value of the contract as a whole.") (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991)); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("*The Bremen*") ("[I]n the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set

aside."); *Jones v. Weibrecht*, 901 F.2d 17, 18–19 (2d Cir. 1990) (applying *The Bremen* standard with equal force in diversity cases).

"While forum-selection clauses are regularly enforced, several conditions must be met." *D.H. Blair*, 462 F.3d at 103 (internal citation omitted) (citing *Phillips v. Audio Active Ltd*, 494 F.3d 378, 383 (2d Cir. 2007)). "Determining whether to dismiss a claim based on a forum selection clause involves a four-part analysis. The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement." *Phillips v. Audio Active Ltd*, 494 F.3d 378, 383 (2d Cir. 2007) (citing *D.H. Blair*, 462 F.3d at 103); *see Compuweigh Corp. v. Honeywell Int'l, Inc.*, No. 3:16-cv-01108 (VAB), 2016 WL 7197360, at *3 (D. Conn. Dec. 9, 2016) (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)).

"The second step requires [a court] to classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so." *Phillips*, 494 F.3d at 383 (citing *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)); *see Compuweigh Corp.*, 2016 WL 7197360, at *3 (citing *Martinez*, 740 F.3d at 217).

"Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause." *Phillips*, 494 F.3d at 383 (citation omitted). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Phillips*, 494 F.3d at 383 (citation omitted).

"The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or

overreaching.'" *Id.* at 383–84 (citing *The Bremen*, 407 U.S. at 15); *see Compuweigh Corp.*, 2016 WL 7197360, at *3 (citing *Martinez*, 740 F.3d at 217).

### 1. Reasonably Communicated

A forum selection clause is reasonably communicated where it is "phrased in clear and unambiguous language." *Magi XXI, Inc. v. Stato Delia Citta del Vaticano*, 818 F. Supp. 2d 597, 604–05 (E.D.N.Y. 2011), *aff'd*, 714 F.3d 714 (2d Cir. 2013). Courts have also considered the inclusion of a forum selection clause within the main text of a contractual agreement to support a finding that the forum selection clause was reasonably communicated. *See, e.g.*, *Gasland Petroleum, Inc. v. Firestream Worldwide, Inc.*, No. 1:14-cv-597, 2015 WL 2074501, at *5 (N.D.N.Y. 2015) (finding reasonable communication where forum selection clause was included in the "main body of the text"); *U.S. ex rel. QSR Steel Corp., LLC v. Safeco Ins. Co. of Am.*, No. 3:14-cv-1017 (VAB), 2015 WL 4393576, at *6 (D. Conn. July 16, 2015) (finding that a forum selection clause was reasonably communicated where "it was unambiguously written into the subcontract"); *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) (finding forum selection language sufficiently "clear and unambiguous" even where forum selection clause was written in "fine print").

It is well-settled that the meaning of a forum selection clause is a "matter of contract interpretation." *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 75 (2d Cir. 2009).[4] Because the indemnity agreement at issue here is a written contract, under Connecticut law, a court must construe the clause to give effect to "the intent of the parties," which a court determines "from the language used interpreted in the light of the situation of the parties and the circumstances connected with

---

[4] The Court notes that Section 7 of the 1996 Warranty Agreement also includes a choice-of-law provision, which reads: "This right [to indemnification] also applies to the substantive law of the respective court of jurisdiction." The Pierburg Entities do not take issue with the choice-of-law provision; so, this Court will apply Connecticut law.

the transaction." *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 838 A.2d 135, 144 (Conn. 2004) (quoting *Poole v. City of Waterbury*, 831 A.2d 211, 224 (Conn. Super. Ct. 2003)). In doing so, a court must accord the language "common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Id.* If the language is "clear and unambiguous, the contract is to be given effect according to its terms." *Id.*

Although a forum selection clause may be ambiguous, this one is not. The provision plainly states that, if an "indemnifiable member of its distribution network abroad is alleged to be liable for personal injury and/or property damage due to product defect . . . this contractual partner may . . . assert claims for indemnity . . . at the jurisdiction of the main claim." 1996 Warranty Agreement § 7. These terms are not imprecise or unclear "by reason of abstractness" or "not sharply outlined." *See* Black's Law Dictionary (10th ed. 2014) (defining "vague").

The forum selection clauses also were included in each of three warranty agreements, in the body of the respective contract, and in the same font size and kind as those around it. BMW's Opp'n Br. at 4–6. Furthermore, the Pierburg Entities have twice entered into the warranty agreement with substantially similar forum selection clauses, the latter of which refers to earlier agreements. *See* 2012 Warranty Agreement at 2 ("Exempted are serial damages previously reported to the Contractor by BMW, which are handled according to the warranty agreement valid at the time of the application."). Thus, these forum selection clauses were fairly communicated to the signatories of the contracts. *See Phillips*, 494 F.3d at 383.

## 2. Mandatory or Permissive

A forum selection clause can be either mandatory or permissive. "A so-called permissive forum clause only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate." *Phillips*, 494 F.3d at 386

(citations omitted). "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Magi XXI, Inc.*, 818 F. Supp. 2d at 605. "A mandatory forum clause is entitled to the *Bremen* presumption of enforceability." *Phillips*, 494 F.3d at 386 (citation omitted). The Court finds that this forum selection clause is permissive.

In *Phillips*, the forum selection clause read: "any legal proceedings that may arise out of [the agreement] are to be brought in England." 494 F.3d at 382 (internal quotations omitted). The Second Circuit agreed with the district court that this clause was mandatory. *Id.* at 386. The use of the phrase "are to be brought" established England as an obligatory venue for proceedings within the scope of the clause. *Id.*; *see also D.H. Blair & Co*, 462 F.3d at 103 (finding as mandatory "a forum-selection clause explicitly stating that the Investors 'consent to the jurisdiction of the state and federal courts in the City of New York for the purpose of . . . enforcing any award of arbitrators.'").[5]

In contrast, in *John Boutari*, where the parties' contract read, "This Agreement shall be governed and construed according to the Laws of Greece. Any dispute arising between the parties here under shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts," the Second Circuit held that the forum selection clause was permissive rather than mandatory. 22 Fed.3d at 52. The court explained that "[a]lthough the word 'shall' is a mandatory term, here it mandates nothing more than that the [Greek courts] have jurisdiction." *Id.* at 52 (citations omitted). "The general rule in cases containing forum selection clauses it that [w]hen only jurisdiction is specified the clause will generally not be

---

[5] The Court noted, however, that, even absent the forum selection clause, venue would be proper because the Federal Arbitration Act venue provisions must be read permissively. *D.H. Blair*, 462 F.3d at 105.

enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Id.* (internal quotation marks omitted).

Here, the forum-section clauses in the three agreements at issue are permissive. The clauses guarantee one forum, at least, will be available to hear disputes, *see Phillips*, 494 F.3d at 386 ("Contracting parties may intend to agree on a *potential* situs for suit so as to guarantee at least one forum will be available to hear their disputes."), without obligatory venue language making that jurisdiction the exclusive jurisdiction on the designated forum, *Magi XXI, Inc.*, 818 F. Supp. 2d at 605 ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." (quoting *Phillips*, 494 F.3d at 386)). The language in the November 21, 1995, Warranty Agreement states: "Contractual Partner may, at its own discretion, also assert claims for indemnity . . . against the other Contractual Partner at the Court of jurisdiction of the main claim." Def.'s Ex. A at 4–5. The other two warranty agreements contain substantially similar language. *Compare* Def.'s Ex. B at 8 ("[T]his contractual partner may, at his own discretion, assert claims against the other contractual partner for indemnity . . . also at the jurisdiction of the main claim."), *with* Def.'s Ex. C at 10 ("BMW may also take the necessary procedural steps at the relevant place of jurisdiction in order to enforce its claims against the Contractor.").

The use of "may" within this forum-selection clause is unambiguously permissive, without language suggesting the word does not carry its usual meaning. *Cf. Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 266 (2d Cir. 2014) ("[T]he statute is entirely permissive, declaring that 'the town board *may* . . . provide an emergency medical service, a general ambulance service, or a combination of such services . . . and to that end *may* . .

[c]ontract with one or more . . . organizations' to provide such services.") (citation omitted). Inclusion of the phrase "at his own discretion" further supports this conclusion.

Because this language suggests that the clause is permissive, the clause is not automatically entitled to *The Bremen* presumption of enforceability. *See Phillips*, 494 F.3d at 386. Unenforceability, however, does not follow from such a conclusion.[6] Instead, the permissive forum-selection clause language suggests that the parties intended a potential forum for derivative claims, including claims against the Pierburg Entities.

### 3. Applicability

BMW LLC argues that the 2012 Warranty Agreement is the operative agreement on account of its preamble, which states that it supersedes and replaces all prior agreements. BMW Opp'n Br. at 6. The Pierburg Entities argue that the language in the 1996 agreement, the operative agreement at the time the Kent's car was built, does not confer personal jurisdiction over the Pierburg Entities in the state of Connecticut. Pierburg's Reply Br. at 2. As discussed

---

[6] The Pierburg Entities argue that, because the forum-selection clause is not mandatory, "the agreement cannot be construed as Pierburg's consent to personal jurisdiction." Pierburg Reply Br. at 2. The Pierburg Entities misconstrue the significance of a mandatory forum-selection clause. In *John Boutari*, the Second Circuit stated: "The choice of forum must be mandatory rather than permissive." 22 F.3d at 53. But the critical issue is the reason the choice of forum must be mandatory. The clause must be mandatory for a court to dismiss a matter for lack of personal jurisdiction, when the parties have contracted for the dispute to be heard in a particular jurisdiction other than where the claim is presently being heard. *See id.* ("[A]n agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion . . . .") (citation omitted); *see also id.* ("[T]he district court erred in holding that it was without jurisdiction, and its judgment of dismissal is reversed. The matter is remanded to the district court with instructions to retain jurisdiction and dispose of the litigation on the merits."); *D.H. Blair*, 462 F.3d at 106 (affirming that the district court in New York could take jurisdiction where the forum-selection clause was permissive: "[T]he district court in the S.D.N.Y. did not abuse its discretion by refusing to transfer the case"); *BNY AIS Nominees Ltd. v. Quan*, 609 F. Supp. 2d 269, 278–79 (D. Conn. 2009) (granting a motion to dismiss for improper venue where a forum-selection clause mandated disputes be heard in Bermuda).

below, regardless of which version of the warranty agreement applies, the agreement is not unreasonable, unjust, or otherwise invalid.

### 4. Unreasonable, Unjust, or Invalid

The Pierburg Entities argue that, even presuming the validity of the 1996 Warranty Agreement's forum-selection clause, the language must "indicate[] in explicit language such as 'I consent to the jurisdiction of the state and federal courts of [State X]'" for consent to, or waiver of, personal jurisdiction to apply. Pierburg Reply at 2. The Court disagrees.

The presumption of validity may be overcome by a clear showing that the clauses are unreasonable under the circumstances. *Roby*, 996 F.2d at 1363. "[T]o escape the contractual clause, [one] must show 'that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Quan*, 609 F. Supp. 2d at 278 (quoting *The Bremen*, 407 U.S. at 18).

"The Supreme Court has construed this exception narrowly: forum selection . . . clauses are 'unreasonable' (1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party 'will for all practical purposes be deprived of his day in court,' due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state." *Id.* The Pierburg Entities fall short of demonstrating that any of these four exceptions apply here.

First, there is nothing to suggest that the forum selection clauses in the Warranty Agreements were "the result of fraud or overreaching." Indeed, the agreements are part of an arm's-length, business transaction between sophisticated parties. The Court therefore must assume that "the [Pierburg Entities] were compensated in advance, in other terms of the contract

such as the price, for bearing the burden of which they now complain, and if so they would reap a windfall if they are permitted to repudiate the forum selection clause." *IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 437 F.3d 606, 610 (7th Cir. 2006) (internal quotation marks and citation omitted); *cf. The Bremen*, 407 U.S. at 14 ("There is strong evidence that the forum clause was a vital part of the agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations."). To the extent that the Pierburg Entities are claiming they made an unwise bargain, "courts do not unmake bargains unwisely made." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 42 A.3d 227, 234 (Conn. 2016) (citation omitted).

Second, the Pierburg Entities do not argue that it will be deprived of its day in court. Pierburg Entities has not suggested anything about the District of Connecticut that would make this Court gravely inconvenient or unfair. Indeed, the Pierburg Entities entered into an agreement with BMW LLC to put its product into the stream of international commerce. The express terms of the agreement contemplate the international scope of the arrangement, bringing within the contract's scope jurisdictions that make different requirements of product guarantees. *See* 1996 Warranty Agreement § 4.1.1 ("BMW shall make available to the Contractor any defective parts from the countries listed in the Attachment (i.e., the countries listed therein require mandatory return of the parts). BMW shall send the parts to the Contractor. The Contractor shall inspect the parts and notify BMW of the results in writing. BMW will, if necessary, carry out an independent inspection or take part in the Contractor's inspection.")[7]; *see also* 2006 Warranty Agreement § 1.2 ("In case of deficiency, the Contactor shall be obligated to carry out inspections

---

[7] *See also* 1996 Warranty Agreement § 4.2 ("All BMW sales markets not listed in the Attachment are countries without mandatory return. BMW will inspect defective parts from these countries. Delivery of the parts to the contractor is not applicable. The Contractor is also entitled to inspect the parts, provided that he notifies BMW in time.").

necessary for the clarification of the defect and its cause. To this end, the Contractor shall use as much as possible the information provided by BMW.").

As a result, the Pierburg Entities cannot argue, at least credibly so, that it had no knowledge of, and thus could not anticipate, Connecticut as a forum. Even though the factors that determine the forum are mutable, that is merely a consequence of the Pierburg Entities' products being used in jurisdictions all over the world, and these interests were reasonably communicated to the Pierburg Entities. Thus, "in the light of the situation of the parties and the circumstances connected with the transaction," *PSE Consulting, Inc.*, 838 A.2d at 145, the Pierburg Entities were aware of the provision in both the agreements, in that it reviewed and amended them consistent with the parties' broader course of dealing over a period of twenty years.

The third factor, fundamental unfairness of the chosen law depriving the plaintiff of a remedy, is not applicable at all to the Pierburg Entities, as a potential defendant in this case. In any event, even if this factor could be applied to the Pierburg Entities as a defendant in order to encompass any defenses to this lawsuit that they may have, the Pierburg Entities have pointed to no defense not available to them in some other forum that Connecticut forbids.

The fourth and final factor, whether the clause contravenes a strong public policy of the forum state, also does not favor negating this forum selection clause. First, the Pierburg Entities have not indicated how enforcement of the provision would offend a strong public policy of Connecticut. Nor do they suggest a possible forum for BMW LLC's claim.

Having failed to address these specific factors outlined by the Second Circuit, the Pierburg Entities instead more generally argue that the forum selection clause is "overbroad,"

and, thus, unenforceable because the clause does not specify a jurisdiction. Pierburg Reply at 3. The Court disagrees.

The Pierburg Entities, as the resisting party, have not sustained their "heavy burden of showing that it would be unfair, unjust, or unreasonable to hold [them] to [their] bargain." *Martinez*, 740 F.3d at 219. "Where [] forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Rudzewicz*, 471 U.S. at 473 (internal citation omitted) (quoting *The Bremen*, 407 U.S. at 15). Simply put, "[i]t is not unfair to expect contracting parties to live up to the terms of [an] agreement to which they agreed." *Doctor's Assocs., Inc. v. Keating*, 805 A.2d 120, 123 (Conn. App. 2002), *aff'd,* 836 A.2d 412 (Conn. 2003). To rule otherwise would certainly contravene Connecticut's general policy preference for the enforcement of forum-selection clauses. *See Meribear Prods., Inc. v. Frank*, 140 A.3d 993, 999 n.9 (Conn. App. Ct. 2016) (noting that, with respect to commercial contracts, "Connecticut case law is clear that the courts will uphold an agreement of the parties to submit to the jurisdiction of a particular tribunal.") (quoting *Phoenix Leasing, Inc. v. Kosinski*, 707 A.2d 314, 316 (Conn. App. Ct. 1998)).

The presence of the forum selection clause in these Warranty Agreements therefore should be construed as a sufficient basis for conferring personal jurisdiction over the Pierburg Entities. Holding the parties to their bargain is especially important here, where the issue of venue is not under the control of the contracting parties, BMW, or the Pierburg Entities. Instead, the venue is one chosen by parties allegedly injured by the products put into the stream of international commerce, including in Connecticut, by both parties. And the warranty agreements entered into by the parties, which include the forum selection clause, are sufficiently limited to provide for this specific possibility. *See* 1996 Warranty Agreement § 1.1 (("The object of this

Agreement is the liability for all defective products . . . ." and provide for the "warranty [of] all products of the contractor from his current and future scope of liability"); *see also* 2006 Warranty Agreement at 1 (allocating loss in the event of a defective product)).

As a result, this forum selection clause is not a wide-ranging forum selection clause covering all interactions between the parties, but rather a far narrower one, addressing the possibility of litigation in a jurisdiction that neither party can determine in advance. *See* 1996 Warranty Agreement § 7 (consenting to jurisdiction of "of the main claim"). In other words, only in jurisdictions where claims are brought relating to the product Pierburg Entities sold to BMW and expressly covered by the parties' Warranty Agreement may BMW sue. *Cf.* 15 U.S.C. § 2301 (defining a "written warranty" as a "promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time"); Keyvan Samini, *Third Party Extended Warranties and Service Contracts*, 54 Ohio St. L.J. 537, 539 (1993) ("The essence of a guarantee is the ability of the provider to fulfill his promise of future performance if called upon."). Judicial economy thus is part and parcel of the presumption of enforceability of a forum selection clause. *Nymbus, Inc. v. Sharp*, No. 3:17-cv-01113 (JAM), 2018 WL 705003, at *5 (D. Conn. Feb. 5, 2018); *id.* (citing *Shute*, 499 U.S. at 594 (noting that forum-selection clauses "spar[e] litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions")).

The specific focus of the Warranty Agreements' forum selection clauses and their limited purpose, to facilitate the defense of and the application of any indemnification related to products liability cases arising out of the parties' underlying contractual relationship, distinguishes this

case from others where the failure to identify a specific jurisdiction in the forum selection clause rendered it "overbroad and vague." *See Conopco, Inc. v. PARS Ice Cream Co., Inc.*, 2013 WL 5549614 at *6 (S.D.N.Y. Sept. 26, 2013) ("The Court instead reads those words, in accordance with their ordinary plain meaning, to refer simply to any court in which either party initiates a proceeding to enforce, defend or interpret any right or obligation under the contract. When that phrase is so interpreted, the clause is plainly and undisputedly unenforceable."); *A.I. Credit Corp. v. Liebman*, 791 F. Supp. 427, 439 (S.D.N.Y. 1992) ("Defendant did not consent to be sued anywhere in the world, but only in the jurisdiction of the partnership's principal place of business or in the jurisdiction of a transferee's domicile or principal place of business."); *see also Redrock Trading Partners, LLC v. Baus Mgmt. Corp.*, No. CV 113-043, 2014 WL 5106998, at *3 (S.D. Ga. Oct. 10, 2014) (declining to enforce a forum-selection clause because, in the absence of some limiting language, the clause allows for jurisdiction in the courts for any litigation between the parties, both local and federal, of Quebec and Canada, as well as any federal court in "such State in connection with any action or proceeding arising out of . . . this agreement"); *Cent. Ohio Graphics, Inc. v. Alco Capital Res., Inc.*, 472 S.E.2d 2, 4 (Ga. App. 1996) (finding a forum-clause unenforceable regarding the activities of the contracting parties because "the forum selection clause provides no intimation of the forum contemplated").

Indeed, "there is no hard and fast rule as to the geographic precision of a forum selection clause." *Sharp*, 2018 WL 705003, at *4. "[A] dispute could arise with a set of witnesses and a locus of operative facts in any number of locations," *id.* at *5, and given the nature of the business relationship and the particular interest of the parties, to address the possibility of products liability litigation, the designation of a specific jurisdiction is unnecessary, if not unwise, since it is not within either party's control. *See Liebman*, 791 F. Supp. at 429 ("Plaintiff

has not shown that to be 'certain' and hence enforceable, a forum selection clause must indicate a specific geographic jurisdiction in which consent to be sued is given."). "Accordingly, . . . the forum selection clause is not void for uncertainty." *Id.* at 430.

Because Pierburg Entities entered into a forum selection clause under their Warranty Agreements with BMW, and BMW, now faced with a products liability claim in Connecticut, relating to a product covered by these agreements, seeks to asserts its rights under these Warranty Agreements, and this Court finds these forum selection clauses to be enforceable, this Court has personal jurisdiction over the Pierburg Entities.

## IV.    CONCLUSION

For the reasons discussed above, the motions to dismiss the Amended Complaint, Cross-Claim, and Third-Party Complaint as they relate to the Pierburg Entities is **DENIED.**

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of March, 2018.

        /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE